IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MONTA WIMBERLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:18-cv-804-SRW |
| | ) | |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

On September 22, 2015, Plaintiff Monta Shay Wimberly filed applications for a period of disability and disability insurance benefits and for Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, alleging that she became disabled on November 1, 2013. The applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision dated October 18, 2017. Plaintiff appealed that decision and the Appeals Council denied Plaintiff's request for review on July 18, 2018. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 10, 11. Based on review of the parties' submissions, the relevant law, and the record as a whole, the court AFFIRMS the Commissioner's decision.

## II. STANDARD OF REVIEW AND REGULATORY FRAMEWORK[2]

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the

---

[2] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, because that was the version of the C.F.R. in effect at the time Plaintiff filed a claim for benefits. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q.3.

factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520; 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

3

>An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–39 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

vocational expert ("VE"). *Id*. at 1239–40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id*. 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-two years old at the time she filed her applications for benefits and was forty-four years old at the time of the ALJ's decision. R. 29, 186, 192. Plaintiff is a resident of Dothan, Alabama. R. 40. She lives in an apartment with her daughter, a minor. R. 27, 40–41. She is a high school graduate and attended, but did not complete, either college, trade or vocational school; the record is not clear as to which. R. 41, 215.

Plaintiff's primary complaints are "back condition, sleep apnea, [high blood pressure], depression, pain in both knees, cholesterol problems, anxiety, [and] vision problems." R. 75–76, 214. Plaintiff testified that she has lower back pain (for which a doctor prescribed medication), degenerative arthritis in her right knee, and is unable to sit for longer than 10 to 15 minutes or stand or walk for periods longer than 10 minutes. R. 25, 43–46. Plaintiff reported physical problems with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, and stair climbing. R. 239. Plaintiff last earned income in 2012 working as a mental health technician and previously was employed as a nurse assistant and home attendant. R. 41, 54, 215.

Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since November 1, 2013, the alleged onset date[.]" R. 21. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "osteoarthritis, muscle spasm of the lower back, obesity, sleep apnea, anxiety disorder, and depressive disorder[.]" R. 22. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id*. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform sedentary[5] work as defined in 20 CFR 404.1567(a) and 416.967(a) except she can occasionally operate foot controls. She can never climb ladders, ropes or scaffolds. She can occasionally climb ramps or stairs, occasionally balance, and occasionally crouch. She can never kneel or crawl. The claimant is limited to low stress work, defined as only simple decision making required.

R. 24. At Step Four, based upon the testimony of a VE, the ALJ concluded that Plaintiff "is unable to perform any past relevant work." R. 29. At Step Five, based upon Plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as an information clerk, a food and beverage order clerk, and a final assembler. R. 30, 55. Accordingly, the ALJ determined that Plaintiff "has not been under a disability . . . from November 1, 2013, through the date of this decision[.]" R. 31.

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a); 416.967(a).

## IV. DISCUSSION

Plaintiff presents a single issue on appeal: "[w]hether the ALJ erred at step four of the five-step sequential evaluation process by failing to explain why the ALJ rejected Dr. Meadows' opinion that the claimant can never stoop." Doc. 13 at 1. The premise of Plaintiff's argument is that the ALJ erred when he did not specifically mention stooping in his decision.[6] She contends that "[t]he ALJ is required to state specifically the weight accorded to *each* item of evidence,[7] and the ALJ failed to articulate why he rejected Dr. Meadows' opinion that Ms. Wimberly never stoop." *Id*. at 6–7 (emphasis in original).

Dr. Meadows, D.O., a physical consultative examiner, examined Plaintiff on a only one occasion on January 29, 2015. R. 27, 418–431. Concerning Plaintiff's postural limitations, Dr. Meadows concluded that Plaintiff can never climb stairs and ramps; never climb ladders or scaffolds; never stoop, kneel, crouch or crawl; and that she can occasionally balance. R. 425. The ALJ assigned "little weight" to Dr. Meadows' postural limitations assessment.[8] R. 27. Specifically, the ALJ explained:

> The record demonstrates generally normal physical examinations, no recommended surgical intervention after November 2016, and ambulation without an assistive device as well as medical appointments consisting primarily of medication refills. In addition, the claimant testified that she

---

[6] A physical limitation, such as stooping, "may reduce [a claimant's] ability to do past work and other work." 20 C.F.R. §§ 404.1545(b); 416.945(b). Stooping is defined as the ability "to bend the spine alone." S.S.R. 85-15, 1985 WL 56857 at *2. "Some stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work, particularly when objects below the waist are involved. If a person can stoop occasionally (from very little up to one-third of the time) in order to lift objects, the sedentary and light occupational base is virtually intact." *Id*. at *7.

[7] Plaintiff did not provide a citation to support this statement.

[8] The ALJ assigned partial weight to Dr. Meadows' opinion outside of postural limitations and outside of Plaintiff's "ability to push, pull, reach, handle, finger and feel." R. 27.

> takes care of her minor daughter, attends school events, cooks meals, drives, shops in stores, washes dishes and does laundry.

*Id.* (internal citations omitted). The ALJ found that Plaintiff "can occasionally climb ramps or stairs, occasionally balance, occasionally crouch and occasionally operate foot controls." *Id.* Based on Plaintiff's "obesity and degenerative arthritis in her knees, as well as pain symptoms," the ALJ did agree with Dr. Meadows' assessment that Plaintiff should "never climb[] ladders, ropes or scaffolds, and never kneel[] or crawl[]." *Id.* As for Plaintiff's ability to push, pull, reach, handle, finger, and feel, the ALJ also assigned little weight to this portion of Dr. Meadows' assessment because "there is no objective evidence or clinical findings to support limitations in the claimant's use of her hands, arms, and shoulders." *Id.* The ALJ did not specifically mention stooping in his assessment of Dr. Meadows' consultative opinion, nor elsewhere.

The ALJ is responsible for determining a claimant's RFC. 20 C.F.R. §§ 404.1546(c); 416.946(c). Such "assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000 (citing 20 C.F.R. § 404.1546)). But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection . . . [of the] 'medical condition as a whole.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995)). The failure to address each limitation is considered harmless so long as the ALJ's "ultimate conclusion [is] based on substantial evidence." *Newberry v. Comm'r., Soc. Sec. Admin.*, 572 F. App'x 671, 672

(11th Cir. 2014). The court "will not disturb the Commissioner's decision if, in light of the record as a whole, it appears to be supported by substantial evidence." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997) (citing 42 U.S.C. § 405(g)). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Crawford*, 363 F.3d at 1158–59).

In this case, there is substantial evidence in the record to support the ALJ's conclusion, notwithstanding that the ALJ did not specifically mention the ability to stoop. Initially, the court notes that Dr. Meadows was a consultative examiner rather than a treating physician. Therefore, his opinion was not entitled to controlling weight. *See* 20 C.F.R. §§ 404.1527(c)(2); 416.927(c)(2). The opinion of a non-treating doctor, such as a one-time examiner, is not entitled to special deference or consideration. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (finding that when examining patient on a single occasion only, physicians' opinions were "not entitled to deference because as one-time examiners they were not treating physicians"); *see also Crawford*, 363 F.3d at 1160; *Tapley v. Colvin*, No. CV 113-222, 2015 WL 764022, at *3 (S.D. Ga. Feb. 23, 2015). A doctor is not a treating source if the claimant's relationship with the doctor is based solely on the claimant's need to obtain a report in support of his or her claim for disability rather than the claimant's need for treatment or evaluation. *See* 20 C.F.R. §§ 404.1502; 416.902.

In evaluating medical opinions, an ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Some medical opinions deserve more weight

9

than others: "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary," but the opinion of a one-time examiner is not entitled to great weight. *Lewis*, 125 F.3d at 1440; *see Crawford*, 363 F.3d at 1161 (citing *McSwain*, 814 F.2d at 619). Reasons to assign little weight to a medical opinion include "when the evidence supports a contrary conclusion." *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985).

Here, Plaintiff argues that the ALJ failed to explain why he rejected Dr. Meadows' opinion that she could not stoop. Doc. 13 at 3–7. However, the ALJ did address Dr. Meadows' opinion that Plaintiff could not stoop when he afforded little weight to his assessment of Plaintiff's postural limitations. R. 27. In reaching this decision, the ALJ referenced other medical opinions that pointed to "normal physical examinations." R. 27, 436, 460, 469, 480, 487, 502, 506, 513, 516. For example, Joseph H. Sewell, M.D., saw Plaintiff from November 2016 to May 2017. R. 497–522. Dr. Sewell assessed Plaintiff's back as "mild tender paraspinal mid lower back" on four occasions. R. 480, 487, 502, 506. Of particular note, a lumbar spine series conducted by Kenneth Richardson, M.D., on March 3, 2017, at the request of Dr. Sewell, revealed normal lumbar vertebral bodies, leading Dr. Richardson to note his impression that the Plaintiff has a "normal lumbar spine." R. 516. Additionally, the ALJ gave partial weight to the opinion of E. Russell March, Jr., M.D., a State agency medical consultant who reviewed the medical record on December 14, 2015, and assessed Plaintiff's ability to stoop as "unlimited." R. 27, 86. Lastly, the court notes that the ALJ limited Plaintiff to sedentary work which "entails no significant stooping." S.S.R. 83-10, 1983 WL 31251 at *5. Indeed, none of the jobs that

the VE identified and that the ALJ determined Plaintiff could perform requires any stooping. R. 30, 55; *see also* U.S. Dep't of Labor, Dictionary of Occupational Titles ("DOT"), 4th ed. rev. 1991) § 209.567-014, 1991 WL 671794 (food and beverage order clerk); § 237.367-046, 1991 WL 672194 (information clerk); § 713.687-018, 1991 WL 679271 (assembler). For these reasons, the court concludes that the ALJ properly assessed Dr. Meadows' opinion, regardless of the fact that he did not specifically mention stooping.

Plaintiff cites *Merritt v. Berryhill*, No. 2:16-cv-125, 2017 WL 3325738 (M.D. Ala. Aug. 3, 2017), to support her argument. Doc. 13 at 4–5. In that case, the Court reversed and remanded because the ALJ did not include her reasoning for excluding a doctor's opinion that the claimant could never stoop despite assigning that opinion "significant weight." *Merritt* at *4. The present case is distinguishable from *Merritt*. The ALJ in *Merritt* assigned significant weight to the doctor's opinion that the claimant could not perform sedentary work. Here, the ALJ assigned little weight to Dr. Meadows' postural limitations opinion. R. 27. By assigning little weight, the ALJ determined that Dr. Meadows' opinion was not consistent with the record as a whole. Moreover, the ALJ adequately explained his decision as to Plaintiff's postural limitations with references to her medical record and activities of daily living. Thus, the court is able to review meaningfully the ALJ's decision.

Throughout his decision, the ALJ thoroughly discussed and cited the medical evidence of record pertaining to the relevant time period, reviewed Plaintiff's testimony, made credibility determinations, and otherwise explained the reasoning behind the RFC assessment. Plaintiff fails to point to any objective medical evidence demonstrating that she is more limited than assessed by the ALJ. The ALJ's decision articulates the basis for

the weight assigned to the consultative examiner's opinion and cites to substantial supporting evidence in the record. The court discerns no legal error in the ALJ's consideration of the evidence of record, nor in his explanation of the decision. Therefore, the court finds that Plaintiff is not entitled to a remand with respect to the issue raised, and that the decision accordingly should be affirmed.

## V.  CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the Commissioner's decision is AFFIRMED. A separate judgment will issue.

DONE, on this the 30th day of September, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge